# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **THOMAS E. BYRD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 13-CV-193-NJR-DGW** |
| | ) | |
| **DR. FENOGLIO,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM AND ORDER</u>

**ROSENSTENGEL, District Judge:**

Plaintiff Thomas Byrd, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), brings this action for deprivation of his constitutional rights pursuant to 42 U.S.C. § 1983. After an initial screening, Plaintiff was allowed to proceed on one count against Defendant Dr. Fenoglio for deliberate indifference to his serious medical needs in violation of the Eighth Amendment for failing to properly address Plaintiff's complaints regarding his ankle (Doc. 7).

On April 16, 2015, Defendant Fenoglio filed his Motion for Summary Judgment (Doc. 99), asserting he did not ignore Plaintiff's medical concerns and was not deliberately indifferent to Plaintiff's medical needs. Defendant Fenoglio also argues he is protected from liability under the doctrine of qualified immunity. Plaintiff submitted his timely response in opposition to the motion on April 22, 2015 (Doc. 101). For the

reasons set forth below, Defendant Fenoglio's Motion for Summary Judgment is granted.

### FACTUAL BACKGROUND

**O**n December 29, 2010, Plaintiff suffered a displaced, bimalleolar fracture of his right ankle due to an altercation with another inmate while he was incarcerated at Hill Correctional Center ("Hill") (Doc. 99-7, pp. 16-18). An urgent request for an orthopedic evaluation was approved on the same date, and Plaintiff was taken to Galesburg Cottage Hospital for evaluation by an outside orthopedic specialist, Dr. Gregory A. Schierer (Doc. 99-6, pp. 21-23). On December 31, 2010, Dr. Schierer performed an open reduction internal fixation ("ORIF") procedure, which involved inserting plates and screws in Plaintiff's ankle, to remedy the fractures (Doc. 99-6, pp. 29-30).

Following the surgery, Plaintiff was admitted to the infirmary at Hill where he was regularly monitored and provided medication for his pain (Plaintiff's Medical Records, Doc. 99-4, pp. 18-19, 24). Plaintiff was seen by Dr. Schierer for a follow-up examination on January 12, 2011, and Dr. Schierer removed Plaintiff's splint and staples (Doc. 99-8, p. 9). Dr. Schierer noted that x-rays revealed good positioning of the fracture fragments and hardware (*Id.*).

During his next follow-up visit with Dr. Schierer on February 9, 2011, Plaintiff's cast was removed, and the x-rays showed good alignment of the bimalleolar fracture (Doc. 99-8, p. 10). Plaintiff saw Dr. Schierer again for his third follow-up visit on March 9, 2011, wherein Dr. Schierer noted that Plaintiff's right ankle was doing well, but he had intermittent pain (*Id.* at p. 11). Plaintiff was to return in eight weeks for x-rays, and

Dr. Schierer would consider hardware removal at that time (*Id.*). At his deposition on March 26, 2015, Plaintiff testified that Dr. Schierer indicated that if there were any complications, such as swelling, the hardware in his ankle would be removed (Doc. 99-3, p. 4).

Soon after his second follow-up visit, on or about March 23, 2011, Plaintiff was transferred from Hill Correctional Center to Lawrence Correctional Center ("Lawrence") (Doc. 99-3, p. 3). As such, Plaintiff did not see Dr. Schierer for his next follow-up appointment (*Id.* at p. 4). At Lawrence, Plaintiff was examined by a nurse on April 3, April 29, and May 20, 2011, for complaints of pain and stiffness related to his right ankle injury (Doc. 99-5, pp. 9, 12-13). Plaintiff complained in particular about the screws and pins inserted in his ankle (*Id.*). Plaintiff was provided Tylenol and advised to use cold and hot packs (*Id.*). During his May 20, 2011, examination, the nurse referred Plaintiff to a physician (*Id.* at p. 13). Subsequently, on May 26, 2011, Defendant Fenoglio examined Plaintiff's right ankle (*Id.* at 14).

Defendant Fenoglio's exam revealed that Plaintiff was suffering from a stiff ankle joint and experiencing pain when walking and standing (*Id.*). Defendant prescribed Plaintiff Tylenol for his pain and issued him a low bunk permit for six months (*Id.*). Plaintiff testified that during his examination he told Defendant that he needed to have the hardware in his ankle removed (Doc. 99-2, p. 7). According to Plaintiff's medical records, the only other time Plaintiff was examined by Defendant was on June 23, 2011, to address an unrelated issue (Doc. 99-5, p. 15). Plaintiff avers, however, that Defendant Fenoglio examined his ankle approximately three times and, possibly during the third

visit, he was prescribed Tylenol and a low bunk permit (Doc. 99-3, p. 4; Doc. 99-2, pp. 6-7). Plaintiff further testified that before he was seen by Defendant Fenoglio, he wrote to him indicating that he had screws that needed taken out (Doc. 99-2, p. 6).

On or about June 29, 2011, Plaintiff was transferred to Pontiac Correctional Center ("Pontiac") where his ankle was regularly examined (Doc. 99-5, pp. 20-22). Plaintiff was provided Motrin for his pain and issued a low bunk permit (Doc. 99-5, p. 20). On or about May 23, 2012, Plaintiff was transferred from Pontiac to Pinckneyville Correctional Center ("Pinckneyville"), where he was again seen for his complaints of right ankle pain (Doc. 99-5, p. 30; Doc. 99-6, pp. 1-2). An x-ray taken on June 14, 2012, indicated that Plaintiff's hardware was intact, his alignment was normal, and the fracture had healed (Doc. 99-7, p. 9). A September 21, 2012, x-ray indicated there was no change from the findings of the June, 2012, x-ray (*Id.* at 10). Plaintiff's request for removal of his hardware was reviewed at collegial while he was incarcerated at Pinckneyville, but it was not approved (*Id.* at 5).

LEGAL STANDARD

### A. Summary Judgment

Summary judgment is proper only if the moving party can demonstrate there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.* 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material

facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to a judgment as a matter of law where the nonmovant "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of a nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

### B. Eighth Amendment and Deliberate Indifference

The Supreme Court has recognized "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To prevail on such a claim, Plaintiff must show first that his condition was "objectively, sufficiently serious" and second that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted).

With regard to the first showing, the following circumstances could constitute a serious medical need: "[t]he existence of an injury that a reasonable doctor or patient

would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic or substantial pain."  *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)); *see also Foelker v. Outagamie County*, 394 F.3d 510, 512-13 (7th Cir. 2005) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.").

As to the second showing, a prisoner must establish that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'"  *Estelle*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense."  *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even "recklessness," as that term is used in tort cases, is not enough.  *Id.* at 653; *Shockley v. Jones*, 823 F.2d 1068 (7th Cir. 1987). The plaintiff must demonstrate that officials were aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and that the officials actually drew that inference. *Greeno*, 414 F.3d at 653. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inferences from circumstantial evidence… and a fact finder may conclude

that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (citations omitted).

Finally, a plaintiff does not have to prove that his complaints were "literally ignored," but only that "the defendants' responses were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes v. Snyder*, 546 F.3d 516, 524 (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)). A prisoner who receives some treatment can still establish deliberate indifference, so long as the treatment received is "blatantly inappropriate." *Roe v. Elyea*, 631 F.3d 843, 858 (7th Cir. 2011).

## DISCUSSION

At the outset, the Court notes that Defendant Fenoglio does not explicitly contest that Plaintiff made a sufficient showing under the objective inquiry that his ankle condition constitutes a "serious medical need," and the Court finds that Plaintiff's ankle condition and the attendant pain and swelling it caused may be considered a serious medical need. *See Hayes*, 546 F.3d at 522-23. Plaintiff fails, however, to demonstrate that Defendant Fenoglio acted with deliberate indifference to his medical condition.

The crux of Plaintiff's allegations against Defendant Fenoglio relate to Defendant's refusal to remove the hardware (i.e. pins and screws) that were surgically placed in Plaintiff's ankle during the ORIF procedure performed by Dr. Schierer. The evidence before the Court, when viewed in a light most favorable to Plaintiff, establishes that Plaintiff sought medical treatment for his ankle pain and swelling soon after arriving at Lawrence. Plaintiff was seen by nurses at least three times, and he

wrote Defendant Fenoglio regarding his complaints before Defendant finally examined Plaintiff's ankle and attendant complaints of pain and swelling. Plaintiff was examined by Defendant two, possibly three times, within a three month period. But the only ankle examination by Defendant documented in Plaintiff's medical records was on May 26, 2011, when Defendant noted Plaintiff had a fracture of his right ankle in December 2010, and underwent an ORIF procedure. Defendant noted that Plaintiff's ankle caused pain on walking and standing, and he found Plaintiff suffered from joint stiffness. Defendant prescribed Plaintiff Tylenol for his pain and issued him a six-month low bunk permit. Plaintiff asked Defendant if he could be sent back to Dr. Schierer to have the screws in his ankle removed, but there is no evidence regarding Defendant's response to this request.

The question before the Court is whether the treatment prescribed by Defendant, evidenced in the record, constitutes deliberate indifference. Plaintiff argues that Defendant Fenoglio should have sought to have the screws and pins from his ankle removed, and his failure to do so constitutes deliberate indifference. Importantly, it is well established in this Circuit that although a prisoner is entitled to access to health care, he is not entitled to receive "unqualified access to health care" and, moreover, he is not entitled to demand specific care or the best care possible. *Johnson v. Doughty*, 433 F.3d 1001, 1013 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). In particular, a prison physician is not required to authorize a visit to a specialist to render constitutionally acceptable medical care. *Pyles v. Fahim*, 771 F.3d 403, 411 (7th Cir. 2014). Rather, prison physicians are entitled to base their treatment decisions on their own professional

judgment, provided such decisions are not such a substantial departure from accepted professional judgment, practice, or standards. *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996). A medical professional is entitled to deference in treatment unless no minimally competent professional would have so responded under those circumstances. *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008).

Here, the record is devoid of any evidence to suggest Defendant Fenoglio's treatment of Plaintiff's ankle condition was such a substantial departure from accepted professional judgment or practice to warrant a possible finding of deliberate indifference. Importantly, Dr. Schierer, the outside orthopedist who performed the ORIF procedure on Plaintiff's ankle and conducted subsequent follow-ups, never specifically indicated that the hardware in Plaintiff's ankle should be, or would need to be, removed. Rather, Dr. Schierer indicated that he would "consider" hardware removal. Defendant Fenoglio was entitled to rely on his own professional judgment in treating Plaintiff's ankle condition, and there is no evidence suggesting that his conservative treatment, including the provision of pain medication and a low bunk permit, was a substantial departure from accepted practice. Additionally, x-rays of Plaintiff's ankle preceding his treatment by Defendant indicated that Plaintiff's fracture had healed and there was good positioning of the hardware. Further, the evidence establishes that upon Plaintiff's transfers to Pontiac and Pinckneyville, Plaintiff was prescribed similar treatment regimens by his treating physicians. Thus, other medical professionals responded similarly to Plaintiff's medical concerns—implicitly endorsing Defendant Fenoglio's prescribed treatment.

Plaintiff may have wanted different treatment, but his disagreement with Defendant's course of treatment does not support a possible finding of deliberate indifference, as prisoners are not entitled to unfettered access to health care. The evidence, when viewed in a light most favorable to Plaintiff, does not establish a genuine issue of fact as to whether Defendant Fenoglio violated his Eighth Amendment rights. Accordingly, Defendant Fenoglio is entitled to summary judgment on Plaintiff's claim of deliberate indifference.

CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment filed by Defendant Fenoglio (Doc. 75) is **GRANTED**, and this case is **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant and against Plaintiff.

If Plaintiff wishes to contest this Order, he has two options. He can ask the Seventh Circuit to review the order, or he can first ask the undersigned to reconsider the Order before appealing to the Seventh Circuit.

If Plaintiff chooses to go straight to the Seventh Circuit, he must file a notice of appeal *within 30 days* from the entry of judgment. FED. R. APP. P. 4(a)(1)(A). The deadline can be extended for a short time only if Plaintiff files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. FED. R.APP. P. 4(a)(5)(A), (C). *See also Sherman v. Quinn*, 668 F.3d 421, 424 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v.*

*Illinois State Univ.*, 667 F.3d 800, 807 (7th Cir. 2011) (explaining the excusable neglect standard).

On the other hand, if Plaintiff wants to start with the undersigned, he should file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). The motion *must* be filed within twenty-eight (28) days of the entry of judgment, and the deadline *cannot* be extended. FED. R. CIV. P. 59(e); 6(b)(2). The motion must also comply with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *Elustra v. Mineo*, 595 F.3d 699, 707 (7th Cir. 2010); *Talano v. Nw. Med. Faculty Found., Inc.*, 273 F.3d 757, 760 (7th Cir. 2001). *See also Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012) ("To prevail on a Rule 59(e) motion to amend judgment, a party must clearly establish (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment.") (citation and internal quotation marks omitted).

So long as the Rule 59(e) motion is in proper form and submitted on-time, the 30-day clock for filing a notice of appeal will be stopped. FED. R.APP. P. 4(a)(4). The clock will start anew once the undersigned rules on the Rule 59(e) motion. FED. R.APP. P. 4(a)(1)(A), (a)(4), (a)(4)(B)(ii). To be clear, if the Rule 59(e) motion is filed outside the 28-day deadline or "completely devoid of substance," the motion will not stop the clock for filing a notice of appeal; it will expire 30 days from the entry of judgment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Talano v. Northwestern Medical Faculty Foundation, Inc.*, 273 F.3d 757, 760–61 (7th Cir. 2001); *Martinez v. Trainor*, 556 F.2d 818,

819–20 (7th Cir. 1977). Again, this deadline can be extended only on a written motion by Plaintiff showing excusable neglect or good cause.

The Court has one more bit of instruction regarding the appeals process. If Plaintiff chooses to appeal to the Seventh Circuit, he can do so by filing a notice of appeal in this Court. FED. R. APP. P. 3(a). The current cost of filing an appeal with the Seventh Circuit is $505.00. The filing fee is due at the time the notice of appeal is filed. FED. R. APP. P. 3(e). If Plaintiff cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* ("IFP motion") along with a recent statement for his prison trust fund account. *See* FED. R. APP. P. 24(a)(1)(C). The IFP motion must set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If he is allowed to proceed IFP on appeal, he will be assessed an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He will then be required to make monthly payments until the entire filing fee is paid. 28 U.S.C. § 1915(b)(2).

**IT IS SO ORDERED.**

**DATED: August 19, 2015**

s/ Nancy J. Rosenstengel
**NANCY J. ROSENSTENGEL**
**United States District Judge**